Case is No. 24-2482, Clyde Rombach III v. Plumbers Local Union No. 27 Pension Fund. Mr. Winslow. Thank you. Stephen Winslow on behalf of Appellant Plumbers Local Union No. 27 Pension Fund. I'd like to reserve two minutes for about all of my time. I'll be speaking then for nine minutes about the argument that the trustees did not abuse their discretion and then my colleague Scott McCollum will be discussing our arguments as to remand and relief for four minutes. That's fine. So first we would submit to you that the trustees did not abuse their discretion based upon their interpretation of the term trade or craft in the plan document. This issue centers around with whether Mr. Rombach was re-employed in a trade or craft that was utilized in the industry. We would submit that the trustees reasonably determined that he was re-employed in a trade or craft utilized in the industry when he was working in the senior project manager. Before you go further, I just want to go through a timeline here and make sure I understand what happened. I'm hoping that both sides will agree on this. Maybe you won't. I don't know. We'll see. 1976, Rombach begins employment under the plan. Correct? That's correct. Okay. And I assume then, although it's not clear in the record, he becomes a member of the bargaining unit. Correct. Okay. He's working as a plumber. Correct. Okay. And then in 1989, 13 years later, he begins working for Tomco as a foreman plumber. Correct. Okay. And then approximately 2005-2006, he's promoted to project manager. Correct? That is correct. Okay. And for reasons I don't understand, he retains union membership and Tomco continues contributing to the fund on his behalf. Correct? That is correct. Was that a mistake? No. There's not really evidence in the record, but I can tell you, Your Honor, is they let certain people continue to work under the plan and accrue benefits. Okay. Even though he, am I correct in understanding, he's sort of in management. He's not a plumber, he's not a foreman, now he's an office guy. Correct. But he's still in the bargaining. He's still accruing benefits and he's treated for purposes as being in the bargaining unit. Okay. Well, then he becomes a senior project manager apparently in 2008. Because at the end of 2008, he resigns union membership and Tomco ceases contributing, right? That's correct. All right. Did he then immediately go into the senior project manager job? So it's a little unclear from the record that at some point after that, he then went into the senior project manager position. Okay. But he's got the same job description. Correct. Different title, same job description. That's correct. And he's now not in the union. Correct. Okay. And then he seeks early retirement in August, 2016, and he becomes eligible for pension payments under normal retirement in 2018. And the board denies the benefits end of 2018. Correct? Actually, starting in 2016. 2016. Yeah. In 2016 when he applied. So what happened is he became eligible for an early retirement pension. Specifically, the plan provides for an early unreduced if you have at least 30 years of service. And so he started collecting that before normal retirement age at age 60. And then he continued. His benefit was suspended at that point. He continued to work during that whole period. He was a senior project manager. He continued to work in that position up through the end of 2018. So both after he reached normal retirement age and then for a little over a year after that. And at that point, he then retired and then his benefit resumed. So what we're talking about is that period of time, roughly three years. Okay. All right. Well, I'm just going to tell you, show my cards here. The equities seem to really favor him because once he ceased being a member of the bargaining unit, he should have been able to retire. He was vested. His pension accrued. He should have been able to retire. Right? Well, your honor, respectfully, I would disagree with that. And I think what the key piece is, is when you're talking about these suspension of benefits rules, they apply whenever you go back into work in which you were working under the plan. We get into the whole definition of trade or craft. Right. And so it's not necessarily, it doesn't have to necessarily be the exact same position. It doesn't have to be the exact same position. What I would submit to you is, is that when you look at this, they're meant to prevent people from going and basically double dipping and receiving their pension benefit while they Right. And that makes sense if a union member who retires takes a job opportunity from another union member or a potential union member. But here, he wasn't a union member. He's already out of the bargaining unit. What I would say with respect to that, your honor, is, in fact, whether he's a union member or not is irrelevant to that analysis. And the reason I would say that is, for example, if he went and worked as a project manager for a non-union contractor, his benefit would have still been suspended, even though he would not have been a union member. So if he goes to a non-union contractor, he works for a non-union contractor, he's not a union member, but his benefit would have still been suspended because he's working in a trade or craft utilized in the industry. We would submit that with respect to that trade or craft. We applied it in the sense of its common use, that it's an occupation. Well, that can't be right. It can't be any occupation. Well, if it's utilized in the industry. In what industry? The construction industry. Okay. So if he went and was a carpenter, anything in the construction industry. Exactly. Even a project manager who's sitting in an office looking at spreadsheets. Correct. But working in the industry is a separate and independent criterion. Correct. So this has to mean something different or it would just be superfluous, right? Well, and there's two pieces. One's before normal retirement age and one is after normal retirement age. So after normal retirement age, there is a provision of a risk. The regs. But here, let's focus on the plan before we get to the regs because you're not on a strong footing. I think you'd agree. You're on a stronger footing under the regs than under the plan. I would actually say under the plan document, I think we have a strong footing for it because ultimately the question under the plan document is, was he reemployed in a trade or craft that's utilized in the industry? That's how the plan document itself is written. And you're entitled to deference, but your reasoning seemed entirely, when I say you, I mean the plan, not you the attorney. It seemed like the reasoning was perfectly circular. He's employed in a trade or craft because he was hired in a trade or craft. I'm not sure what we're reviewing here. I'm not sure how we give you deference if the plan never explained why the senior project manager position is a quote trade or craft. Well, I think what we would say is he was employed. They went through the analysis of, was it a trade or craft utilized in the industry and found that it was because he both participated under the plan as a project manager and as a senior project manager, which then under the regs, you actually do the analysis of, you compare a project manager to senior project manager to say, did you participate in the same trade or craft in which you were assumed that project manager is a trade or craft, right? Well, based upon the ordinary usage of it. Which sure doesn't sound like a trade or craft. I mean, trade or craft is someone who's a plumber, a foreman, someone who's in the field working with their hands. I would disagree with that. I would say my trade or craft is a practice of law. That's my occupation. I don't think that it's limited to just construction. And I think it's also important. Your honors consider that it's these suspension benefit provisions are not just in plans that are in the construction industry. They're in, for example, teams, there are teams, there's pension funds that have suspension benefits provisions in the trucking industry. There are people who are in a variety of other industries where that has to be considered. So you can't define trade or craft as just being a particular construction industry position, because that's not how, I don't think that that's a workable solution. But the plan says that it's going to use ordinary names, right? It says it's going to give plain meaning except for pay and compensation that have a technical meaning. And if we look at trade or craft and just look up their dictionary definitions, they inevitably have something about using your hands, about manual work. Well, actually, there's a number of different definitions. So you could select from a number of different definitions that are in the dictionary, one of which is it talks about occupation. But as we discussed a moment ago, it can't be occupation because that's a different criterion, right? I mean, if it's any work at all in the industry, that's already covered by a different requirement. Well, I would say it just refers to occupation. That's, I mean, that's our position on it. Well, you could have used the word. It's so much easier to say in any other occupation, but it doesn't. It says in any other trade or craft, than any trade or craft. I see my time is up. You can go ahead. Okay. With respect to this, we think what ultimately happened here is the court just gave lip service to the standard review and did not actually apply the standard of review as it's intended to be applied. We would submit that this was a reasonable interpretation of the plan document. We would also submit that if you look under the regs that apply after normal retirement age, which asks, was he re-employed in a trade or craft in which he was employed at any time under the plan? And then if you look at way the regulations have been adopted, they compare the skills, the functions of the different positions, both pre-retirement and post-retirement. We think with respect to that, that we've satisfied that here because it's essentially the same job. How, as you've explained it, how is working in a trade or craft any different than being re-employed in the industry? I, well, I think in the term, the plan document provision, so there's two different pieces. The plan document provision, I see your honor's point with respect to that, that it's all encompassing with respect to that. With the regulations, though, that apply after normal retirement age, it's as if they were re-employed in a trade or craft in which he was employed at any time under the plan. So that's a more restrictive definition. And you have to show that they actually worked under that type of work when they were in the plan. We would submit that they did because courts have found that, for example, if somebody goes from the land sheet versus carpenters pension fund, it's the Ninth Circuit, it's an unreported decision, but not presidential. In that particular case, the participant was a carpenter before when he was When he went into the period where he was suspended, he was a furniture refinisher, so slightly different task, but same type, same type of work, not necessarily union position. And the court there in Ninth Circuit found that, yes, that was, he was re-employed in the trade or craft. Now, if I compare that to the Eighth Circuit decision and Eisenrich versus Minneapolis retail meat cutters, Eighth Circuit presidential decision, in that particular case, the participant was a meat cutter under the plan, and so accrued benefits as a meat cutter. And then when his benefits were suspended, he was a sales development associate. And the court there, the Eighth Circuit found that this was not the same trade or craft because they used completely, had completely different responsibilities, completely different tasks that they performed. Here, that's not the case because you've got somebody who was a project manager who identified the project manager job description as the same job description for senior project manager, and said that essentially the only difference was there was a little bit more responsibility in that senior project manager position. So we would submit that under the regs, he was re-employed in the same trade or craft in which he was employed under the plan. I also think... That's hooking your wagon back to project manager and the fact that we have no explanation in the decision about why a project manager is a trade or craft. So what interpretation do we have to defer to? And let me piggyback on that by saying that in the collective bargaining agreement, it's a unit consisting of plumbers, pipe fitters, and apprentices. Project manager isn't even mentioned there. That is correct, Your Honor. So what... I assume you'd agree that plumbers, pipe fitters, and apprentices, they're all part of the trade or craft, right? I would say those are part of the same trade or craft. Yeah. And isn't it reasonable to think that people who aren't mentioned aren't part of the trade or craft, like project manager and senior project manager? I'm sorry I'm hijacking your question. Okay. Your Honor, what I would argue is if they participated in the plan, they are part of the same trade or craft and that he did participate in the plan as a project manager and he received accrued pension benefits. All right. But the other side of that coin is when he stopped participating in the plan, when he became a senior project manager, now he's not part of the trade or craft. He can't have it both ways. Well, but you could have somebody, for example, who goes and they work non-union and their benefit would still be suspended in that situation. If you go work for a non-union employer, it's not just if you're in a union position. These suspension benefit rules are meant to be broader. And even, like I said, if he went, for example, if he went and worked as a project manager for a non-union competitor that's in the same, and it's not really an issue here, but it deals with the geographic area, the same industry, same geographic area. They go work for a competitor as a project manager, as a plumber, that's all suspendable, even though they're not in the bargaining unit either in that particular situation. And they're not, you know, they're not in there. One final point, if I may, that I'd also like... I think Judge Freeman had a question too. Are you okay? Please go ahead. Okay. One final point I'd like to make is I think I would submit the difference between project manager and senior project manager. The reason we think that they're in the same trade or craft is because that is the job that has a little more responsibility. I kind of equate it to, if you're talking about an associate versus a partner, they're still in the same trade or craft, the practice of law. One has more responsibility. It doesn't become something different just because you get more responsibility. Okay. Thank you. We'll hear from Ms. McCollum. May it please the Court, Skye McCollum on behalf of Appellant. Your Honor, even if Appellee's benefits were improperly denied, which as my colleague discussed, they were not properly denied, the District Court still erred by ordering the pension plan to actually pay the claimant's benefits instead of remanding the case to the Board of Trustees for further analysis. So when the decision of an ERISA plan's Board of Trustees or plan administrator to deny a participant's benefits at the outset is reversed by the Court, the proper remedy is to remand back to that plan administrator so that they may reconsider it and give it the appropriate discretion. This Court discusses the appropriate remedy for an improper denial of benefits under ERISA in Miller v. American Airlines. In this 2011 case, the Court discusses that when a benefit is denied at the outset, the proper remedy is to remand to the plan administrator to reevaluate the case using reasonable discretion. So this is opposed to a situation where a claimant was already receiving benefits and they were cut off. In this case, the participant had not yet begun receiving a benefit, and so the proper remedy is remand. This is explained by the Seventh Circuit in Hackett v. Xerox Corp. when they were deciding that the proper remedy is remand in these kinds of cases. Let me just stop you for a second because there's some intuitive appeal to that, that if my accusation earlier that the reasoning of the Board was circular, you're still in the same trade of craft because you're in the same trade of craft. There's some, I think, appeal to say, well, give us a chance to explain ourselves. Yes, exactly. You want the Board to have the opportunity to say, well, okay, the reasons we gave were insufficient. Now give us a chance to provide sufficient reasons.  All right, but here's the big but. Don't you have to ask the District Court for that opportunity, and did you do that here? So we have to sort of raise, we did not waive this argument because we did say in- You got a waiver. It wouldn't, because a waiver is an intentional relinquishment of right. Clearly, you didn't waive it, but maybe you forfeited it, and the argument in the brief on the other side was that it was forfeited because what could have been done in the District Court was to Judge Hornack, Your Honor, we have given an ample explanation. Our explanation is sound. Suspension is proper. If in the alternative, our explanation was lacking in some way, we asked the Court for a remand so that we can explain ourselves better. Yes, so we, in our motion for summary judgment, talk a lot about the deference that is due to the plan and the plan administrators when they're denying an appeal, and so that is where we preserved that argument because we discussed that the plan has to defer to the interpretation of the plan administrator. The Court has to defer to the interpretation of the plan administrators, but that same argument extends to if there is a lack in some procedural aspect, if they didn't explain something fully, then they still have to defer to the plan by, in that case, remanding it to the plan. What law says that? That seems to be an extra step there. So the deference- You would agree it's not that hard for counsel to say, our explanation sufficed, and if it didn't suffice, give us another chance. Remand is the right remedy. That's not that hard to argue in the alternative. Lawyers do that all the time. Yes, so, I mean, Hackett v. Xerox Corp., the Court sort of discusses why deference is really important. They say that the Court is not in the place to make the determination of entitlement to benefits. The Court must not substitute its own judgment for that of the plan administrator, and so that same deference is afforded to the plan in that if there is a procedural error, they did not fully sort of consider the participant's appeal, then they have to remand back to the plan. They have to defer. They're just not in the place to make that determination. But you don't really have case law to support that principle. You're sort of asking us to look at the general deference owed to the plan administrator and say that implicit in that general deference is the alternative remedy of remand in the event the explanation doesn't suffice? Yes, that is correct, Your Honor, and in conjunction with that, we did state in our answer to the complaint that the remedies requested by Rombach were not available under the law, and so that sort of covered the basis of what they were asking for. The actual award of the benefits was not covered by the law. What about a motion for reconsideration, just to give the district judge the opportunity to consider Miller? We did not ask for a motion for reconsideration. We did not feel like that was the appropriate forum to do so, and that was an issue that we could raise an appeal. All right. May I discuss an alternative? I think we've got your brief on that, Thank you, Ms. McComb. Let's hear from Mr. Carney. If it please my fellow craftsmen, I'm James D. Carney. I'm an apprentice appearing on behalf of Senior Project Manager Rombach. I recognize this is an unusual way to address the court, but it illustrates the absurdity of the position taken by the pension fund in this case. They're saying every occupation is creating craft occupation. You occupy positions of judges, I'm an attorney, but we're creating craftsmen by definition of the pension fund. I think that's absurd, and I think the court has understood our argument on that point. I don't want to waste time going through arguments, which I think the court understands very well. So what I'd like to do is simply answer any questions the court has, but I just don't want to repeat what the court understands. Thank you, Mr. Carney. My first question is, did you have any amendments or additions to the chronology that I went through with your friend on the other side? And can you also shed any light on the apparent incongruity of your client remaining in the bargaining unit, even when he ceased being a plumber and became a project manager? Yes, Your Honor, and to the extent that this case and definition of creating craft involves interpretation of law, we filed declaration by the Rombach, and he stayed. He remained a union member because he thought he might return to the bargaining unit. That's his explanation. Okay, so he became a project manager and thought he might want to go back to being a plumber foreman, and it was important for the continuation of benefits for him to remain in the unit. Yes, that's his explanation, Your Honor. Okay, but did that have some sort of disrupting impact or disruptive impact on how we analyze this case, this incongruity? No, I don't think. I think you analyze the case as you have following district court's view of saying, look, Wayne is a project manager for whatever reason. He's in the union. He paid dues. Pension contributions were made for him. He didn't supervise other project managers. All that changed when he became a senior project manager. The pension fund has never really seemed to explain why that is or is not significant. I would suggest if you apply a pan of contract interpretation and say, look at the practice of the parties as interpreting what contract means, here he was treated, right way or wrong way, as a creating craft employee while he was a project manager. Once he became a senior project manager, it's pretty different. A different treatment went on for years. Well, he's treated differently in the sense that the union isn't making, the company's not making contributions anymore, and he's not a member of the bargaining unit, but strangely he has the identical job title, job description, different title, but same job description as previously. That's right. The same job description. And if your honor would look for a moment at the job description, you will see it. Just hold on one second, Mr. Carney, because this is being recorded. So I don't want anything you say to be missed. So make sure you're on the microphone there. Go ahead. My apology. If your honor would look at the job description, it says, positioning summary, plan, direction, coordinate, activity of design, construction, project, to ensure that goals and objectives are accomplished within the prescribed time frame. Ensure it works best by the specifications and plans are completely successful. That's just not the description of a plumber or a piper. It's not a description of anyone who is really a trader craftsman. But you just admitted that when he was a project manager, he was part of the trader craft because he was a member of the bargaining unit. Well, he was treated that way. Right. So why, if they could treat him as a member of the trader craft as a project manager, why can't they continue to treat him as a member of the trader craft as a senior project manager when the job description was identical? Well, because they didn't do it. They saw him as being a different. And also, if your honor read from the contract, the contract deals with covers of plumbers, pipefitters. It doesn't cover project managers or senior project managers. All of which suggests that he should not have continued in the bargaining unit once he ceased to be a former foreman plumber and became a project manager. The whole case makes no sense. So what are we supposed to do with it? Because, you know, I mean, the equities don't only go in your client's favor. And here's why I suggest. Once he ceased to be a member of the bargaining unit as a senior project manager. So now he's a non-union guy. When he goes back to work after retirement, he takes the position of somebody who might have been in the union. So aren't there two potential problems? Number one, he could be taking a position that could be filled by a union member. And number two, even if he's not, isn't his ability to double dip? Doesn't that open the door for him to work at a lower wage rate that will have the effect of suppressing the wages for the union workers? Well, again, your honor, you have to assume for that purpose that he really was a Caincraft employee when he was a project manager. I think people made a mistake back then. Now that mistake is not before this court. But the point is, everyone created him once he became a senior project manager. As though he's out of the bargaining unit. He's no longer contributing to the pension fund. He's somebody totally different. But I think the key question is, what is a Caincraft employee? Is a Caincraft employee someone who plans, directs, and coordinates activities and designates contractors? I don't think so. I mean, think of a duck rule. If it walks like a duck, it quacks like a duck, and quacks like a duck, it is a duck. So what do we make of the example in the regulation that it's the participation in a multi-employer plan is limited to electricians. The electrician retires, becomes re-employed as a foreman, and trade or craft includes related supervisory activities. So doesn't that tell us that trade or craft can reach into the echelons of management? Now, upper level. We have in his declaration statement, he did not do any plumbing work as a senior project manager. He did not supervise plumbers. He did not supervise people supervising plumbers. He just supervised the project managers, the job he used to have. Yeah. So he said he did supervising, and that's what he did. And he spent 90% of his time in office. Again, you just can't... But it sounds like the crux of your argument is that he really wasn't in a trade or craft when he was a project manager. I wish I was. But that's all water under the bridge. There's nothing we can do about that because he was so treated. Yeah. Okay. So the easy way to decide the case is to say that he was mistakenly classified as a bargaining unit member, and he was in a trade or craft then by sort of factual error, but he wasn't in an abstract sense. He was not a member of the trade or craft once he left the ranks of foreman plumber and became a project manager. I think that's exactly the situation, Ron. I recognize that's not how he treated, but I think you're just dead right in describing what really happened, in fact, and what should have happened in terms of contract and benefit consequences thereafter. But he got a benefit from continuing to be a member of the bargaining unit while a project manager. Maybe that's why they suspended him because he wanted to have it both ways. Let me change my answer to that, Ron. I'll answer your question and answer it like, he was not a member of the bargaining unit. You've read the description of a job covered by the bargaining unit. They don't list project manager or senior project manager. They don't list it because these people are not trade and craft people. So the union erroneously made contributions to his pension plan when he was not technically a member of the bargaining unit. I think that's right. I think the plan should not have accepted those contributions because he wasn't a member of the bargaining unit. All right. Thank you very much, Mr. Carney. Thank you, John. Good to see you all again. Fellow craftsmen will unite. We'll hear rebuttal from Mr. Winslow. Thank you. We would again submit that project manager was a position for which he was employed under the plan. He accrued benefits for approximately three years under the plan as a project manager. And notably, if you look at the decision, as I believe it will indicate, if he did not have those three years of benefits, he would have had less than 30 years of service and he wouldn't have been eligible for an early retirement pension. Is your position that he appropriately accrued benefits during those three years? We are taking the position that he appropriately accrued benefits. We did not want to open the can of worms into arguing that he did not. So we've taken the position that he appropriately accrued benefits, but then that also means you've got to be bound by the suspension of benefits provisions if you are going to work in the senior project manager position. And as your honor pointed out, the regulations regarding suspension of benefits do reach into supervisory skills, supervisory skills over a position in which you participate in the plan. As a senior project manager, to the extent there's anything different at all, it essentially is that they supervise other project managers and have, as it was described in the record, a little more responsibility. But if we conclude that it reaches a foreman who's directly supervising people engaged in manual work, but it doesn't reach management just working in an office behind a desk, then do you lose? I would think that would be problematic, and I think it would be problematic for these provisions as a whole, because it's not, you're not just talking about the construction industry, you're talking about trucking, you're talking about people who work in the arts, for example. There's pension funds for people who work in the arts, and that, you know, could be considered a craft. It's not working with your hands, but it's a craft. And I would also submit that the practice of law could also be considered a trade or craft as well. I think that occupation is a more appropriate definition of it, and for those reasons we'll be asking you to reverse the district court. Can I just get clarity on a couple points? It would still count if you were re-employed in the industry, and you were re-employed by an employer who didn't participate in the plan, right? Correct. And it would still count as re-employment in the industry if you were re-employed by a non-unionized employer? That's correct. So whether there are contributions being made, or whether you're in or out of the union, is not a basis to conclude that somebody is involved in a trade or craft? That's correct. Okay, thank you. All right, thank you to all counsel. The court will take the matter under advisement.